United States District Court
Southern District of Texas
**ENTERED**
November 22, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TEXAS EASTERN TRANSMISSION, LP f/k/a TEXAS EASTERN TRANSMISSION CORPORATION, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | |
| 7 ACRES OF LAND, MORE OR LESS, LOCATED IN LAVACA COUNTY, TEXAS; 2.6 ACRES OF LAND, MORE OR LESS, LOCATED IN COLORADO COUNTY, TEXAS; 10.5 ACRES OF LAND, MORE OR LESS, LOCATED IN WHARTON COUNTY, TEXAS; WILLIAM R. JENKINS and WIFE KAREN HANCOCK JENKINS; ESSIE LYNN LESLIE, Individually and as Trustee of the ESSIE HANCOCK LESLIE FAMILY TRUST; and W5 SISTERS PROPERTIES, LTD., | § § § § § § § § § § § § § § § § | CIVIL ACTION NO. H-16-2498 |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court are Texas Eastern Transmission, LP's ("Texas Eastern") Motion for Partial Summary Judgment ("Texas Eastern's MSJ") (Docket Entry No. 50) and Property Owners' Objections to Texas Eastern's Summary Judgment Evidence (Docket Entry No. 55). For the reasons stated below, Texas Eastern's Motion will be granted in part and denied in part and Property Owners' Objections will be sustained or overruled as explained below.

## I. <u>Factual and Procedural Background</u>

This condemnation action arises from a failed attempt to negotiate the terms of renewal of certain Easement Agreements (the "Agreements").[1]  Plaintiff Texas Eastern entered into Agreements with predecessors in title William and Karen Jenkins, Essie Lynn Leslie, individually and as Trustee of the Essie Hancock Leslie Family Trust, and W5 Sisters Properties, Ltd. (collectively, "the Property Owners") or their predecessors in title for the right to operate a pipeline running through parcels of property in the Texas counties of Lavaca, Colorado, and Wharton.  The Agreements contained an initial thirty-year term set to expire on June 14, 2016.  Each of the Agreements provided the Grantee, Texas Eastern, with a right to renew the agreement for an additional period of thirty years "for a consideration."[2]  All but one of the Agreements stated that consideration was "to be arrived at between the parties [t]hereto at or prior to the expiration of said first period."[3]  In the event that the parties to the Agreements were "unable to agree" upon consideration, the Grantee (Texas Eastern) reserved "the right

---

[1]The Agreements are attached to Texas Eastern's MSJ as Exhibits A-4 through A-7 and are hereinafter referred to individually as Agreements 1 through 5 in the same order as attached.

[2]<u>See</u> Agreements 1-5, Docket Entry No. 50-1, pp. 41, 45-46, 56, 65, & 71.

[3]<u>See</u> Agreements 1, 3-5, Docket Entry No. 50-1, pp. 41, 56, 65, & 71.

to have such consideration fixed through the exercise of the power of eminent domain."[4]

As the end of the first period approached, Texas Eastern notified the Property Owners of its intent to renew the Agreements in letters dated May 27, 2016. Texas Eastern and the Property Owners were unable to come to an agreement as to consideration for the renewal term.

On August 8, 2016, Defendants filed suit in a Texas state court seeking to eject Texas Eastern. Texas Eastern responded by filing this condemnation action and by removing the state court action. The court consolidated the actions. Plaintiffs then counterclaimed for trespass.

Texas Eastern now seeks judgment as a matter of law that it did not trespass, that Defendants are not entitled to declaratory or injunctive relief, and that Defendants are not entitled to exemplary damages.

## II. Analysis

### A. Objections to Summary Judgment Evidence

The court first addresses the Property Owners' objections to Texas Eastern's summary judgment evidence. The Property Owners object to the following statements from the Affidavit of Roger C. Russell (Docket Entry No. 50-1):

---

[4]See Agreements 1-5, Docket Entry No. 50-1, pp. 41, 46, 56, 66, & 71.

- The Easement Agreements provide for a thirty (30) year term ending June 14, 2016, with an absolute right for Texas Eastern to renew the Easement Agreements for "an additional period of thirty years upon the same terms and conditions. . . ." (¶ 13)

- . . . When termed easements are requested by landowners, Texas Eastern's custom and practice is to negotiate absolute renewal rights because the infrastructure involved often has an expected in service life greater than the proposed term. Rights of renewal are important to Texas Eastern and the continued operation of the Pipeline System, and are an important part of the original bargain where a term may be agreed upon. The language included in the Easement Agreements is consistent with Texas Eastern's custom and practice and was viewed by me as an absolute right to renew so that Texas Eastern could continue operations of its Pipeline System without any "gap" in the possession of the Property for its Pipeline operations thereon. (¶ 14)

- From June 14, 2016 through August 18, 2016, Texas Eastern continued to operate and maintain its Pipeline on the Property, because Texas Eastern was under the honest and good faith belief that it had continued legal rights to the Property under colorable title to operate its Pipeline pursuant to the Easement Agreements. (¶ 18)[5]

The Property Owners object to the first statement as an impermissible legal conclusion. The court agrees. To the extent that the Agreements unambiguously reflect the parties' intent, it is the court's role to construe and interpret those Agreements. Mr. Russell's statement also lacks the requisite foundation to serve as evidence of the parties' intent when executing the Agreements at issue. The Property Owners' objection to Mr. Russell's first statement is therefore **SUSTAINED**.

---

[5]Affidavit of Roger C. Russell, Exhibit A to Texas Eastern's MSJ, Docket Entry No. 50-1, pp. 4-5.

The Property Owners object to the second statement as an attempt to gain an inference of the routine business practices of Texas Eastern without proper foundation. The Property Owners object that "[t]o obtain a Rule 406 inference of the routine practice of a business, a plaintiff must show a sufficient number of specific instances of conduct to support that inference." See Mobil Exploration and Producing U.S., Inc. v. Cajun Construction Services, Inc., 45 F.3d 96, 99 (5th Cir. 1995). But the Property Owners' authority contradicts their objection. See id. (reversing and remanding upon concluding that the district court failed to consider evidence of routine practice). Although the statement alone cannot establish Texas Eastern's routine business practice, the statement is admissible evidence. The Property Owners' objection to this evidence is **OVERRULED**.

Finally, the Property Owners object to Russell's statement regarding Texas Eastern's "honest and good faith belief" about its legal rights on the basis that legal conclusions and conclusory statements are inadmissible. The court agrees. An alleged trespasser's belief goes to the issue of damages. Coinmach Corp. v. Aspenwood Apartment Corp., 417 S.W.3d 909, 921 (Tex. 2013) ("[O]ne who invades or trespasses upon the property rights of another, while acting in the good faith and honest belief that he had the lawful and legal right to do so is regarded as an innocent trespasser and liable only for the actual damages sustained.").

Whether an alleged trespasser acted in good faith is a question for the fact-finder. Brannon v. Gulf States Energy Corp., 562 S.W.2d 219, 224 (Tex. 1977) ("[O]ne can be completely mistaken in his claim of superior title and yet be a trespasser in good faith. The question is usually one of fact.") (citations omitted). Russell's statement that Texas Eastern held an "honest and good faith belief that it had continued legal rights" therefore amounts to an inadmissible legal conclusion. The Property Owners' objection to this statement is therefore **SUSTAINED**.

**B.    Motion for Partial Summary Judgment**

1.  Standard of Review

Summary judgment is appropriate if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment. Fed. R. Civ. P. 56(c). Summary judgment may be granted not only as to an entire case but also as to a particular claim, or part of a claim. See Fed. R. Civ. P. 56(a); see also 2010 Notes of Advisory Committee to FRCP 56 at ¶ 3. The standard of review for a district court's ruling on summary judgment is reviewed de novo. Abbott v. Equity Group, Inc., 2 F.3d 613 (5th Cir. 1993).

Disputes about material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986). The moving party is entitled to judgment as a

matter of law if "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." <u>Celotex Corp. v. Catrett</u>, 106 S. Ct. 2548, 2552 (1986).

A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (quoting <u>Celotex</u>, 106 S. Ct. at 2553). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." <u>Id.</u> If, however, the moving party meets this burden, "the nonmovant must go beyond the pleadings" and produce evidence that specific facts exist over which there is a genuine issue for trial. <u>Id.</u> (citing <u>Celotex</u>, 106 S. Ct. at 2553-54). "In order to avoid summary judgment, the nonmovant must identify specific facts within the record that demonstrate the existence of a genuine issue of material fact." <u>CQ, Inc. v. TXU Mining Co., L.P.</u>, 565 F.3d 268, 273 (5th Cir. 2009).

In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 120 S. Ct. 2097, 2110 (2000). The court resolves factual controversies in favor of the nonmovant, "but only when there is an actual controversy, that is, when both

parties have submitted evidence of contradictory facts." <u>Little</u>,
37 F.3d at 1075.

      2.  <u>Application</u>

      a.  Trespass

The Texas Supreme Court "has consistently defined a trespass
as encompassing three elements: (1) entry (2) onto the property of
another (3) without the property owner's consent or authorization.
<u>Environmental Processing Systems, L.C. v. FPL Farming Ltd.</u>, 457
S.W.3d 414, 419 (Tex.), <u>reh'g denied</u> (May 1, 2015). The parties do
not dispute the first two elements. Defendants argue that Texas
Eastern's authorization to enter the property terminated on
June 14, 2016, along with the expiration of the Agreements.[6] But
Texas Eastern maintains that it exercised its "absolute right" to
renew the Agreements.[7]

Because the Agreements are the source of Texas Eastern's
authorization to enter the property, the trespass claim turns on
whether Texas Eastern successfully renewed the Agreements. In
order to determine the rights of the parties under the Agreements,
the court must attempt to interpret them.

> Under Texas law, whether a contract is ambiguous is a
> question of law for the court subject to de novo review.
> <u>Texas Commerce Bank N.A. v. National Royalty Corp.</u>, 799
> F.2d 1081, 1083 (5th Cir. 1986). If a contract is found

---

    [6]<u>See</u> Defendants' Original Answer and Counterclaim
("Defendants' Counterclaim"), Docket Entry No. 31, p. 9 ¶¶ 39-40.

    [7]Texas Eastern's MSJ, Docket Entry No. 50, p. 9.

> to be unambiguous, its interpretation is a part of the court's law obligation. <u>Chapman & Cole v. Itel Container Int'l B.V.</u>, 865 F.2d 676, 681 (5th Cir.), <u>cert. denied</u>, 493 U.S. 872, 110 S. Ct. 201, 107 L.Ed.2d 155 (1989). A Texas court will deem a contract unambiguous when it is reasonably open to just one interpretation given the rules of interpretation and the surrounding circumstances. <u>Technical Consultant Servs., Inc. v. Lakewood Pipe of Texas, Inc.</u>, 861 F.2d 1357, 1362 (5th Cir. 1988).

<u>Hanssen v. Qantas Airways Ltd.</u>, 904 F.2d 267, 269 (5th Cir. 1990). In a contract interpretation dispute, summary judgment is appropriate where the language of the contract is unambiguous. <u>See</u> <u>id.</u>

> Texas Eastern argues that
>
> [t]here is no genuine dispute as to any material fact that (1) with a valid Certificate authorizing Texas Eastern to operate and maintain the Pipeline, Texas Eastern is authorized by the Natural Gas Act to condemn the easements needed for the Pipeline; and (2) the Easement Agreements grant Texas Eastern the absolute right to renew for a period of an additional thirty years.

Texas Eastern's MSJ, Docket Entry No. 50, p. 12. The Property Owners do not contest Texas Eastern's right to exercise the power of eminent domain under the Natural Gas Act, 15 U.S.C. § 717f(h).[8] But the Property Owners contend that Texas Eastern failed to renew the Agreements. Because the parties do not dispute that Texas Eastern expressed an intent to renew the Agreements, the deciding issue is whether reaching agreement on consideration before the

---

[8]<u>See</u> Defendants' Counterclaim, Docket Entry No. 31, p. 7 ¶ 29 ("Defendants admit that Plaintiff is authorized to exercise the power of eminent domain to condemn the Property").

expiration of the initial term was a condition precedent to renewal.

The Property Owners point to the language in the agreement stating that: "'Grantee shall have the right to renew same for an additional period of thirty years upon the same terms and conditions, **for a consideration to be arrived at between the parties hereto at or prior to the expiration of said first period.**'"[9] They assert that "Texas Eastern's option to renew was clearly conditioned upon an agreement being reached on or before June 14, 2016, regarding consideration for renewal."[10]

Texas Eastern counters that the Property Owners ignore the facts that:

> (1) not all of the easement agreements at issue even contain the quoted language; (2) none of the agreements conditions the *renewal* itself on the successful completion of negotiations for compensation "at or prior to the expiration" of the agreements; and (3) all of the agreements grant Texas Eastern the right to have the consideration fixed via eminent domain *without any time limitation for achieving same* in event that the parties cannot reach voluntary agreement prior to the expiration of the agreements' terms.

Texas Eastern Transmission, LP's Reply in Support of Motion for Partial Summary Judgment ("Texas Eastern's Reply"), Docket Entry No. 57, p. 6.

---

[9]Defendant Property Owners' Response to Texas Eastern's Motion for Partial Summary Judgment ("Property Owners' Response"), Docket Entry No. 54, pp. 9-10 ¶ 18.

[10]<u>Id.</u> at 10.

Texas Eastern correctly points out that one out of the five Agreements does not contain the language that consideration is "to be arrived at between the parties hereto at or prior to the expiration of said first period."[11]   This distinct Agreement, attached to Texas Eastern's Motion for Partial Summary Judgment as Exhibit A-5, only states that Grantee shall have the right to renew "for a consideration."[12]   Summary judgment as to the trespass claim will be granted with respect to that Agreement.

The remaining Agreements are open to the reasonable interpretation that renewal is conditioned on either (1) the agreement of consideration or (2) the election of eminent domain as a means for fixing consideration prior to expiration.   Texas Eastern argues that the Property Owners' interpretation leads to the "absurd" result that Texas Eastern would be required to "start the renewal process in time for an eminent domain proceeding to be commenced, if necessary, and finally completed *prior* to the expiration of the easement terms."[13]   This does not necessarily follow from the Property Owners' interpretation.   A jury could find that Texas Eastern need only elect, before the expiration of the first term, to have consideration fixed by exercising the power of eminent domain.

---

[11]Texas Eastern's Reply, Docket Entry No. 57, p. 6.

[12]See Agreement 2, Docket Entry No. 50-1, pp. 45-46.

[13]Texas Eastern's Reply, Docket Entry No. 57, pp. 6-7.

Moreover, Texas Eastern's interpretation leads to its own absurd result. Texas Eastern argues that the language "establish[es] only a period, prior to expiration, for the parties to negotiate for the renewal consideration."[14] Assuming <u>arguendo</u> that its interpretation is correct, once Texas Eastern elected to renew, its rights could continue indefinitely regardless of when or whether consideration was fixed. If the time constraints for agreeing to consideration merely establish a negotiation period, the Property Owners could be left without consideration or recourse because only the Grantee is given the right to exercise the power of eminent domain.

Because the renewal language is susceptible to two reasonable interpretations, it is ambiguous; and summary judgment is not appropriate because there is a genuine issue of material fact as to whether Texas Eastern successfully renewed the Agreements and whether, as a result, it had authorization to continue to operate the pipeline on the property.

### b. Declaratory and Injunctive Relief

Texas Eastern argues that the Property Owners are not entitled to declaratory or injunctive relief as a matter of law. The Property Owners do not respond to these arguments, but the court does not find it appropriate to take up the issue of remedies at this stage of the proceedings.

---

[14]<u>Id.</u> at 7.

c.  Actual Damages

The Property Owners seek damages "from Texas Eastern for all revenues and/or profits received as a result of Texas Eastern's bad faith use of the pipeline" during the period of the alleged trespass.[15]  Texas Eastern seeks judgment as a matter of law that the Property Owners are not entitled to "disgorgement" relief.  The Property Owners argue that "[a]ctual damages for trespass can include the loss of any expected profits from the unauthorized use of the property," citing Coinmach, 417 S.W.3d at 921.[16]  But as Texas Eastern points out, the actual damages in that case were for the owner's loss of expected profits.  "[T]he measure of damages in a trespass case is the sum necessary to make the victim whole, no more, no less."  Coinmach, 417 S.W.3d at 921 (citing Meridien Hotels, Inc. v. LHO Financing P'ship I, L.P., 255 S.W.3d 807, 821 (Tex. App.—Dallas 2008, no pet.).  The Property Owners offer no authority, and the court can find none, for the proposition that they are entitled to disgorgement relief.

d.  Exemplary Damages

Texas Eastern argues that the Property Owners are not entitled to exemplary damages as a matter of law.  The court agrees.  Texas law limits exemplary damages to cases in which "the harm . . .

---

[15]Defendants' Counterclaim, Docket Entry No. 31, pp. 10-11 ¶ 44.

[16]Property Owners' Response to Texas Eastern Transmission's Motion for Protective Order and Property Owners' Cross-Motion to Compel, Docket Entry No. 56, p. 9 ¶ 24.

results from:   (1) fraud;  (2) malice;  or (3) gross negligence."
Tex. Civ. Prac. & Rem. Code § 41.003(a).   The Property Owners
failed to plead any basis for exemplary damages and only raise the
issue of malice in their Response.   The Property Owners offer only
a conclusory assertion that Texas Eastern acted with malice and
argue that Texas Eastern was aware of the Property Owners'
contentions during the time of the alleged trespass.   But as the
Property Owners' own cited authority states:   "'The statutory
definition of malice raised the standard of proof required to
attain exemplary damages; the statutory definition requires proof
of the defendant's specific intent 'to cause substantial injury to
the claimant.'"   Wilen v. Falkenstein, 191 S.W.3d 791, 800 (Tex.
App.—Fort Worth 2006, pet. denied).   The Property Owners' evidence
fails to raise a genuine issue of material fact as to Texas
Eastern's specific intent to cause them substantial injury.

e.  Attorney's Fees

Texas Eastern also argues that the Property Owners are not
entitled to attorney's fees.   "For more than a century, Texas law
has not allowed recovery of attorney's fees unless authorized by
statute or contract."   Tony Gullo Motors I, L.P. v. Chapa, 212
S.W.3d 299, 310 (Tex. 2006).   Texas statutorily limits recovery of
attorney's fees to specified actions, none of which apply here.
See Tex. Civ. Prac. & Rem. Code § 38.001 (listing the types of
claims for which fees are recoverable).   The Property Owners

-14-

provide no contractual or statutory basis for the awarding of attorney's fees in this action, and they offer no response to Texas Eastern's arguments. The court finds that, as a matter of law, attorney's fees are not appropriate in this case.

### III. <u>Conclusions and Order</u>

For the reasons stated above, Property Owners' Objections to Texas Eastern's Summary Judgment Evidence (Docket Entry No. 55) are **SUSTAINED IN PART** and **OVERRULED IN PART**. Texas Eastern, LP's Motion for Partial Summary Judgment (Docket Entry No. 50) is **GRANTED IN PART** regarding the trespass claim as it pertains to Agreement 2 (Docket Entry No. 50-1, pp. 45-54) and as to Defendants' claims for disgorgement relief, exemplary damages, and attorney's fees. The remainder of Texas Eastern's MSJ is **DENIED**.

**SIGNED** at Houston, Texas, on this 22nd day of November, 2016.

SIM LAKE
UNITED STATES DISTRICT JUDGE